573 A.2d 1123

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph WASHINGTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 4, 1989.

Filed March 30, 1990.

Frederick W. Ulrich, Asst. Public Defender, Harrisburg, for Washington, appellant.

Julia A. Merl, Harrisburg, for appellee.

Before CAVANAUGH, BROSKY and WIEAND, JJ.

CAVANAUGH, Judge:

This is an appeal from judgment of sentence entered on July 11, 1989 by the Dauphin County Court of Common Pleas following a jury trial taking place from October 6–10, 1988. Appellant Joseph Washington was convicted for possession of a controlled substance with intent to deliver and

possession of drug paraphernalia. Post-trial relief was denied and appellant was sentenced to a period of incarceration of two to twenty-three months. At the time of this offense, Mr. Washington was thirty-four years old and had no criminal record.

Mr. Washington appeals his conviction. Several errors merit the grant of a new trial. We reverse and remand.

Charges in this case stem from the execution of a search warrant at appellant's residence on January 9, 1988. At the time, appellant and his girlfriend lived in an apartment at 1216 Walnut Street. During the two-day period prior to execution of the warrant, Harrisburg City Police allegedly made a controlled purchase [1] of marijuana from their apartment. The controlled purchase was made by a confidential informant out of the sight of surveilling vice officers. The surveilling officers were not able to see which apartment the informant entered.

On the basis of the controlled buy, police obtained a search warrant. An affidavit supporting the search warrant stated that the suspect involved in the controlled purchase was five feet, ten inches tall and weighed 160 pounds. Appellant is six feet, two inches tall and weighs 210 pounds. The defense sought to learn the informant's identity but that request was denied. The informant did not testify at trial, although some evidence of the controlled buy was admitted over defense objection.

A search of appellant's apartment yielded five and three-tenths grams of marijuana, a pipe, two scales, one of which was broken, plastic sandwich bags, cigarette rolling papers, and eighty-six dollars in cash. When the cash, which was found in a dresser drawer, was taken back to headquarters, police testified that they found the ten-dollar bill alleged to have been used in the controlled buy. Based on the seizure, an arrest warrant was issued for the above-mentioned charges.

1. This phraseology is used in the appellate briefs and in the lower court opinion and refers to a drug purchase made by an informant under circumstances controlled by law enforcement authorities.

Appellant turned himself into the Harrisburg Police Station on January 11, 1988. Appellant was arrested by Detective Holland, who read appellant his constitutional rights. Another detective, Arnold, later re-read appellant his rights. Appellant was asked if he understood his rights and he responded positively. However, he was never asked to waive his rights. Appellant never signed a written waiver form.

Appellant was then taken into a room for questioning. Police officers testified that he stated that he did not sell drugs as a business but would occasionally break up a $20.00 bag of marijuana into $5.00 bags and sell them to his friends.

The first issue we shall discuss is whether the trial court erred in allowing certain expert testimony in response to a hypothetical question which assumed facts not properly in evidence. During the trial, the Commonwealth called Detective Holland to testify as to whether, in his expert opinion, the marijuana found in the apartment was possessed by appellant with intent to deliver. Part of the hypothetical question posed to the expert asked him to assume that a controlled buy had taken place within forty-eight hours of the execution of the search warrant:

> In this particular case assuming that there had been controlled buy from this residence within 48 hours of the execution of the search warrant, that a $10 bill, controlled buy money, was recovered from one of the rooms in the apartment, that packaging materials as well as scales, at least two different scales were recovered, are you able to form an opinion in this case as to whether or not the marijuana seized, and I'm speaking specifically with respect to the marijuana seized in the storage room, not the roaches, whether or not that was possessed with the intent to distribute?

(N.T., at 128).

It was error for the trial court to permit the hypothetical question to Detective Holland. It is axiomatic under Pennsylvania law that a hypothetical question to an

expert witness must be based upon facts known to the witness or facts in evidence in the case. *E.g., Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987) (hypothetical questions must be based on matters which appear of record or on facts which are warranted by the evidence).

Evidence of the controlled buy had not yet been placed in evidence at the time that the question to Detective Holland was asked. The Commonwealth sought to cure this defect by placing into evidence testimony concerning the controlled buy later in the case. At best, the Commonwealth's controlled buy evidence indicated only that an unnamed informant was given a sum of money, including a ten-dollar with a recorded serial number, that the informant entered the multi-unit building in which appellant resided, and that he thereafter returned with some marijuana.

The only possible relevance of the controlled buy evidence to the charge against appellant was if the controlled buy was made under circumstances which implicated appellant in the transaction. However, the only record evidence, albeit hearsay, is that the informant made his purchase from an individual who was five feet, ten inches in height and weighed 160 pounds. Appellant, who took the stand, is six feet, two inches tall and weighs 210 pounds. Moreover, the surveilling officers could not see what portion of the building the informant entered to purchase the marijuana and, of course, totally lacking is any admissible evidence as to the identification of the person from whom the purchase was made.

Although there is some evidence that the ten dollar bill with the recorded serial number was recovered in the search of appellant's apartment, this evidence also fails to implicate appellant because it does not prove who had custody of the bill or who placed it in the apartment. It is undisputed that appellant was not the sole tenant of the apartment, but lived there with his girlfriend.

It is abundantly clear the the court should have sustained an objection to the hypothetical question which was central

to the Commonwealth's conviction in this case. We note that although appellant objected to the question primarily on other grounds, appellant also lodged a secondary objection that the question assumed facts not in evidence and he raised that issue in his brief. Thus, the issue was properly preserved.

■ Even if we were to find that the hypothetical question was proper because the Commonwealth later introduced evidence of the controlled buy, we feel that usage of the controlled buy as evidence of appellant's intent was nonetheless improper under the circumstances of this case. The informant did not testify;[2] the evidence shows only that a marijuana purchase may have taken place in appellant's apartment but not that it involved appellant himself.

■ The trial court found that evidence of the controlled buy was admissible to show that appellant had sold marijuana in the past and the jury could therefore infer that he intended to distribute the marijuana he was charged with possessing. It is true that evidence of other criminal acts, which are irrelevant if offered to show the bad character of the defendant, may be introduced as evidence of intent to commit the crime charged. *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989).

Appellant argues, however, that even if evidence of the controlled buy as an uncharged criminal act could have been offered for the purpose of showing intent, the uncharged act must nonetheless be prima facie established by competent proof in order to be admissible.[3] Properly framed, the issue is not whether the controlled buy evidence was introduced for a proper purpose, but whether there was a

2. As to this issue, appellant also asserts that the admission of uncharged criminal conduct denied him his right to confront his accuser.

3. The Commonwealth counters appellant's argument by stating that evidence of the controlled buy was not introduced as evidence of a prior crime or bad act of appellant but only to show that a sale of marijuana took place on the premises. If that were the case, the evidence certainly would have been irrelevant; it would not have been probative of intent if it was not supposed to implicate appellant himself.

sufficient quantum of proof linking appellant with the uncharged criminal act so as to make it relevant to the question of appellant's intent.

Appellant's brief cites *Commonwealth v. Petrillo*, 338 Pa. 65, 12 A.2d 317 (1940), wherein our supreme court said:

> If evidence of other crimes is admitted to support a charge of murder, such evidence ... must "amount to proof" of that other crime and there must be "ground to believe *that the crime charged grew out of it.*" Mere *suspicion* of the commission of another crime will not do.

12 A.2d at 323 (emphasis in original, citations omitted). Appellant also cites *Commonwealth v. Hude*, 256 Pa.Super. 439, 390 A.2d 183 (1978), for the proposition that if proof of another crime is tenuous, the court should not admit evidence of the extrinsic act.

In *Hude, supra,* the supreme court reiterated the general prohibition against introducing other crimes evidence against a criminal defendant, noting that the fact that a person has committed one offense is not proof that he has committed another and because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant. *Hude, citing Commonwealth v. Bradley,* 243 Pa.Super. 208, 364 A.2d 944 (1976). One exception is the introduction of other crimes evidence to show that defendant possessed the requisite intent for the crime charged. *Billa* and *Hude, supra.* In *Hude,* the supreme court found that even if an exception exists, however, that does not end the inquiry as to whether the other crimes evidence is admissible.

■ To keep sight of the underlying policy of protecting the accused of unfair prejudice, courts must balance the actual need for the other crimes evidence in the light of the issues, the evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, the strength or weakness of the other crimes evidence in supporting the issue, and the degree to which the jury will probably be

roused by the evidence to over-mastering hostility. *Hude, supra.* In the instant case, the trial court failed to engage in this balancing test to determine if the evidence was sufficiently necessary and reliable.

The prosecution was in actual need of the evidence of the controlled buy to show intent, as the quantity of marijuana found in appellant's apartment might not have permitted a reasonable inference of intent to deliver. *See, Commonwealth v. Bagley,* 296 Pa.Super. 43, 442 A.2d 287 (1982) (reviewing other cases). No other independent evidence of intent to deliver was available to prove this element of the crime.

On the other hand, evidence that appellant himself had sold the informant marijuana was simply not convincing. Police did not even see which apartment the informant entered. The informant gave a description of the suspect which in no way fit appellant's physical characteristics. A police officer testified that the controlled buy ten dollar bill, identified by serial number, was found in the apartment, but police did not list the bill as part of their inventory of the contents seized. Police did not even have a record of having matched the serial numbers when they went through the evidence back at the police station. Most importantly, appellant was not the only individual who lived in the apartment and had access to it; even if the ten dollar bill were found on the premises, it does not prove that appellant was the individual who sold the informant marijuana. That the controlled buy evidence against appellant was weak is moreover demonstrated by the Commonwealth's failure to seek a conviction or even an arrest of appellant on the charge of selling the marijuana that the informant supposedly bought. *E.g., Hude,* 390 A.2d at 186 (in which the same factor was considered).

Appellant's intent to deliver was a major issue in this case; appellant himself admitted on the stand that he possessed the marijuana, albeit for personal use. Other evidence in the case pointed only to simple possession. Given that there was virtually nothing to link appellant to

the controlled buy, this evidence was highly prejudicial and its admission constituted reversible error.

Appellant also asserts that Miranda warnings were inadequate and that he never explicitly waived his rights, as is required by *Commonwealth v. Bussey*, 486 Pa. 221, 404 A.2d 1309 (1979). Because this issue may arise in the course of a new trial, we will address it. The trial court incorrectly found that trial counsel failed to raise the former part of this issue at the suppression hearing. Counsel did raise this issue in pre-trial motions and during the suppression hearing and we find that it was properly preserved for our review.

We are satisfied that appellant was given the proper Miranda warnings. However, there remains an issue as to whether appellant explicitly waived his rights.

In *Commonwealth v. Bussey, supra*, our Supreme Court rejected the implicit waiver rule of *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) and held that, as a matter of state law, the Commonwealth must show that the accused explicitly waived his *Miranda* rights in order for self-incriminating statements made in the course of custodial interrogation to be admissible. The *Bussey* court rejected the *Butler* formulation which permitted. a finding of waiver when the accused expresses an understanding of his *Miranda* rights and proceeds to give a statement.

The trial court and the Commonwealth both rely, of necessity, on *Commonwealth v. Speaks*, 351 Pa.Super. 149, 505 A.2d 310 (1986) to show that appellant waived his rights. In *Commonwealth v. Speaks, supra*, this court applied *Bussey* to a situation where the accused was fully and adequately advised of his rights, explicitly manifested an understanding of those rights and answered a question posed to him *immediately* afterwards and within the course of the same dialogue. In that case, this court found that immediate, virtually contemporaneous response to questions following a manifestation that one understands one's rights

suffices as an explicit waiver. The court also found that even if it were incorrect in its interpretation of *Bussey*, the error was harmless because the accused merely told police where on the premises contraband was located. Police already had a search warrant and undoubtedly would have uncovered the incriminating evidence on their own.

Because Washington did not explicitly waive his rights, we must look to the circumstances of the arrest, as found by the lower court, to see whether he was advised of his rights and manifested an understanding of his rights immediately before he began answering questions. *See, Speaks, supra.*

The trial court adopted the Commonwealth's version of events relating to appellant's arrest and statement. Appellant appeared at the police station and was initially arrested by Detective Holland, who read him his rights. Detective Arnold, the investigating officer, was called to the booking desk and he arrived ten minutes later. Detective Arnold then re-read the arrest warrant and read appellant his rights. Afterwards, appellant was taken into a room referred to as the DUI room and was asked questions to which police testified that he gave incriminating responses. There was no signed statement taken.

Part of the *Speaks* rationale for not requiring the accused to state explicitly that he waives his rights is that the accused makes his incriminating statement within the course of the same dialogue in which he claims to have understood his rights. The *Speaks* court's use of the word "immediately" is very precise. It means within a second or two of having manifested an understanding of one's rights. From the trial court's synopsis of events in the instant case, it is unclear whether appellant expressed an understanding of his rights and began answering question *immediately* and within the same dialogue. If appellant was moved from one room to another in between saying that he understood his rights and beginning to answer questions, this would militate against a finding that *Speaks* is applicable to the facts of this case.

In light of our remand, we need not discuss the other issues raised in appellant's brief.

Reversed and remanded for a new trial.

WIEAND, J., dissents.