J-A34028-15

2016 PA Super 43

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TALBOT S. SMITH | |
| Appellee | No. 1200 MDA 2015 |

Appeal from the Order Entered June 30, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005217-2014

BEFORE: PANELLA, J., OTT, J., and JENKINS, J.

OPINION BY OTT, J.: **FILED FEBRUARY 19, 2016**

The Commonwealth appeals from the order entered June 30, 2015, in the York County Court of Common Pleas, granting Talbot S. Smith's pre-trial motion for *habeas corpus* relief, and dismissing the sole charge filed against him. Smith was charged with interception of oral communications[1] after he surreptitiously recorded a conversation with his former boss using a "voice memo" application ("app") on his smartphone.[2] On appeal, the Commonwealth contends the trial court erred in concluding that Smith's use of the app on his smartphone did not constitute use of a "device" to

---

[1] **See** 18 Pa.C.S. § 5703(1).

[2] A "smartphone" is a "modern day cellular telephone" with "computer-like capabilities." **Commonwealth v. Stem**, 96 A.3d 407, 409 (Pa. Super. 2014). In the present case, Smith's smartphone, manufactured by Apple Inc., is referred to as an iPhone.

intercept communications under the statute. For the reasons set forth below, we are constrained to reverse the order of the trial court, and remand for further proceedings.

The facts and procedural history underlying this appeal are aptly summarized by the trial court as follows:

> [Smith] worked in the employ of the Unilife Corporation as the Vice President of Integrated Supply Chain until June 14, 2012. On that date, [Smith] was relieved of his duties pending a meeting with his supervisor, Ramin Mojdeh ("Mojdeh"), which was scheduled for June 21, 2012, to discuss his future responsibilities. Between June 14 and June 21, 2012, [Smith] filed an internal ethics complaint, including alleged actions by Mojdeh, using Unilife's third-party reporting site.
>
> During the meeting on June 21, 2012, [Smith] avers that he noticed a copy of the ethics complaint that he filed sitting on Mojdeh's desk. At that point, [Smith] began recording the conversation with his iPhone's "Voice Notes" application. Mojdeh was unaware at the time that [Smith] recorded the conversation.
>
> In mid-July 2012, [Smith] filed an ethics complaint with the SEC. His employment was terminated by Unilife, and, resultantly, [Smith] filed a civil suit against his employer. The existence of the recording was uncovered by Unilife during discovery. On June 20, 2014, after a Unilife attorney contacted the Northern York County Regional Police Deparatment, [Smith] was charged under 18 PA.C.S.A. § 5703(1) (relating to the interception of communications).
>
> At [Smith's] preliminary hearing on August 12, 2014, the charge was held over for court. [Smith] filed an Omnibus Motion for Pre-Trial Relief, which included a Petition for Writ of Habeas Corpus, on January 14, 2015. [Smith] and the Commonwealth were ordered to file briefs on this matter. [Smith] filed a brief in support of his motion on March 4, 2015; the Commonwealth filed a brief in opposition to [Smith's] motion on March 27, 2015.

Trial Court Opinion, 6/30/2015, at 1-2.

On June 30, 2015, the trial court entered an order granting Smith's request for *habeas corpus* relief, and dismissing the sole charge filed against him. This Commonwealth appeal follows.[3] **See Commonwealth v. Hess**, 414 A.2d 1043, 1047 (Pa. 1980) ("[T]he Commonwealth may appeal from an order discharging a defendant upon a writ of habeas corpus[.]").

On appeal, the Commonwealth contends the trial court erred in granting Smith's request for *habeas corpus* relief.[4] Specifically, the question presented is whether Smith's use of a "voice memo" app on his smartphone to record his conversation with Mojdeh was prohibited by the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"),[5] and therefore, supports a charge of interception of oral communications pursuant to Section 5703 of the Act. **See** 18 Pa.C.S. § 5703.

---

[3] On July 14, 2015, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied with the court's directive and filed a concise statement on July 20, 2015.

[4] "[A] petition for writ of *habeas corpus* is the proper vehicle for challenging a pre-trial finding that the Commonwealth presented sufficient evidence to establish a *prima facie* case." **Commonwealth v. Carbo**, 822 A.2d 60, 67 (Pa. Super. 2003) (*en banc*) (quotation omitted). "The decision to grant or deny a petition for writ of *habeas corpus* will be reversed on appeal only for a manifest abuse of discretion." **Commonwealth v. Black**, 108 A.3d 70, 77 (Pa. Super. 2015) (quotation omitted).

[5] 18 Pa.C.S. §§ 5701-5782.

Because the issue raised herein is one of statutory construction, our review is guided by the following principles, derived from the Statutory Construction Act ("SCA"), 1 Pa.C.S. § 1501 *et seq*.

> The SCA instructs that "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). Further, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). When, however, the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering other matters. 1 Pa.C.S.A. § 1921(c).

> Under the SCA, "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S.A. § 1903(a). If the General Assembly defines words that are used in a statute, those definitions are binding. ***Commonwealth v. Kimmel***, 523 Pa. 107, 565 A.2d 426, 428 (1989). A court may presume that in drafting the statute, the General Assembly intended the entire statute to be effective. 1 Pa.C.S.A. § 1922(2). Thus, when construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. ***Commonwealth v. Mayhue***, 536 Pa. 271, 639 A.2d 421, 439 (1994).

***Commonwealth v. Deck***, 954 A.2d 603, 606-607 (Pa. Super. 2008), *appeal denied*, 964 A.2d 1 (Pa. 2009).

Section 5703 of the Wiretap Act provides that "a person is guilty of a felony of the third degree if he … intentionally **intercepts**, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication." 18 Pa.C.S. § 5703(1) (emphasis supplied).

- 4 -

For our purposes, the Wiretap Act defines "intercept" as "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any **electronic, mechanical or other device**." 18 Pa.C.S. § 5702 (emphasis supplied). The Act further defines an "electronic, mechanical or other device" as, *inter alia*:

> **Any device** or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication **other than**:
>
> (1) **Any telephone** or telegraph instrument, equipment or facility, **or any component thereof,** furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business, or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business, or being used by a communication common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties. …

*Id.* (emphasis supplied).

Moreover, we must bear in mind "Pennsylvania's [] Wiretap Act emphasizes the protection of privacy," and, therefore, "the provisions of the Wiretap Act are strictly construed." *Commonwealth v. Spangler*, 809 A.2d 234, 237 (Pa. 2002).

In the present case, the trial court concluded Smith's smartphone did not constitute a "device" under the plain language of the Wiretap Act, based upon both principles of statutory construction, and the Pennsylvania Supreme Court's decision in *Commonwealth v. Spence*, 91 A.3d 44 (Pa. 2014). *See* Trial Court Opinion, 6/30/2015, at 4-6. The trial court

emphasized that the Supreme Court in **Spence** determined **all** telephones are exempt under the statute, regardless of "the **use** to which the telephone is being put[.]" **Id.** at 5, *quoting* **Spence**, **supra**, 91 A.3d at 47 (emphasis in original). The court further explained "the broad language of the Wiretap Act mandates the conclusion that [Smith's] use of his iPhone's 'voice memos' application is the use of a 'telephone … or [a] component thereof.'" **Id.** at 6.

The Commonwealth asserts, however, the trial court's analysis is incorrect. Rather, it maintains the "voice memo" app, used by Smith to make an audio recording, was "analogous to a pre-digital 'tape recorder.'" Commonwealth's Brief at 8. Recognizing the plain language of the Act excludes telephones in its definition of interception "devices," the Commonwealth, nevertheless, argues the legislature did not intend the absurd result which will occur if the trial court's ruling is upheld. Emphasizing the rapidly evolving technological advances of the modern day smartphone, "inconceivable at the time the applicable laws were enacted," the Commonwealth states "one cannot approach modern cases while wearing blinders." **Id.** at 12. Accordingly, it asserts "the modern cell phone must be characterized by [the] function it is performing, and the capacity in which the phone is being used at any given time." **Id.** Furthermore, the Commonwealth distinguishes the Supreme Court's decision in **Spence**, noting that there was "no audio recording made of the conversation" in that case, where a state trooper simply "listened to the conversation on speaker phone, as it occurred on the informant's cellular phone." **Id.** at 14-15.

Rather, the Commonwealth asserts, in the case before us, Smith "recorded a conversation with Dr. Mojdeh … using a 'tape recorder' on his 'mini computer.'" *Id.* at 17.

We begin our discussion by reiterating, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). Here, "[t]he focus and purpose of the [Wiretap Act] is the protection of privacy." ***Commonwealth v. De Marco***, 578 A.2d 942, 949 (Pa. Super. 1990) (emphasis omitted) ("[I]t is readily apparent that our legislature weighed society's interests in the personal privacy of individuals against society's interests in having all relevant evidence thus obtained presented in administrative, civil, and criminal proceedings, and found that the balance favored the personal privacy interests of individuals."). Therefore, any surreptitious recording of a conversation that, by all accounts, would appear to be private, is a violation of the Act.

However, as noted by the trial court, as well as Smith, the plain language of the statute exempts telephones, or "any components thereof" from the definition of an interception "device." 18 Pa.C.S. § 5702. While we may not disregard clear and unambiguous language in a statute in order to pursue its "spirit," we may consider other matters to determine the legislature's intention when the words are not "explicit." 1 Pa.C.S. § 1921(b)-(c). Further, in determining the legislature's intent in enacting a statute, we may presume, *inter alia*, "the General Assembly does not intend

- 7 -

a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

In the present case, the trial court's interpretation of the Act leads to an absurd result. Disregarding the fact that the smartphone technology at issue was not available at the time the relevant subsection was enacted,[6] Smith improperly, electronically, recorded his private conversation with Mojdeh, without Mojdeh's knowledge or consent. The fact that Smith used an app on his smartphone, rather than a tape recorder, to do so, is of no moment. The **surreptitious recording** of the conversation violated the provisions of the Act.[7]

_____

[6] The telephone exemption in Section 5702 was added to the statute in 1988. **See** 1988, Oct. 21, P.L. 1000, No. 115, § 3, imd. effective. However, "[t]he first smartphone was designed by IBM and sold by BellSouth … in 1993." http://www.britannica.com/technology/smartphone.

[7] We note the conversation recorded by Smith was an "oral communication," as opposed to a "wire" or "electronic communication." An "oral communication" is defined in the Act as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702. Neither the trial court, nor Smith, contend Mojdeh had an expectation his conversation with Smith was "subject to interception." **Id. Compare Commonwealth v. Dewar**, 674 A.2d 714, 719 (1996) (finding taped conversation between defendant and complainant, working with police, was admissible at defendant's trial because it was not an "oral communication" under the Act; while defendant had a reasonable expectation of privacy "talking to [the complainant] in his office with the door closed," he did not have an expectation that the conversation would not be intercepted since the defendant, himself, also secretly recorded the conversation), *appeal denied*, 680 A.2d 1159 (Pa. 1996). Therefore, we will presume, for purposes of this appeal, the taped conversation was an "oral communication" as defined in the Act.

However, both Smith and the trial court assert the Supreme Court's holding in **Spence**, *supra*, compels a different result. In that case, a state trooper directed a confidential informant to call his drug supplier and arrange a purchase. The informant did so, and activated the speakerphone function on his cell phone so that the trooper could listen to the conversation. The defendant was later arrested when he appeared to complete the sale. **Spence**, *supra*, 91 A.3d at 44-45.

The defendant filed a pretrial motion to suppress the evidence against him based on a violation of the Wiretap Act, arguing the trooper's actions in directing the informant to call the defendant and listening to the conversation over speakerphone, "constituted an unlawful interception of the conversation[.]" **Id.** at 45. However, like Smith here, the Commonwealth, argued the cell phone was exempted as an interception "device" under the definition in Section 5207. The trial court rejected that argument, and granted the motion to suppress.

In an unpublished decision, a panel of this Court affirmed, concluding the cell phone was not a "device" with respect to the informant, but was a "device" with respect to the trooper "because the service provider had not furnished it to him." **Id.** **See** 18 Pa.C.S. § 5702 (defining "electronic, mechanical, or other device as "[a]ny device … that can be used to intercept a wire, electronic or oral communication other than … [a]ny telephone … furnished to the … user by a provider of wire or electronic communication service in the ordinary course of its business"). Therefore, this Court found

that because the trooper was not a "furnished 'subscriber or user' of the cell phone, [his] use was an unlawful interception under the provisions of the Act." *Spence*, *supra*, 91 A.3d at 45 (footnote omitted).

On appeal, the Supreme Court reversed, stating there was no basis to categorize the cell phone differently depending upon who was listening to the conversation. *Id.* at 47.  The Court explained:

> The intent of the General Assembly may be discerned from the plain language of the words employed in the statute.  The cell phone over which the trooper heard the conversations between the [informant] and [the defendant] clearly was a telephone furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business.  The language of the statute states that telephones are exempt from the definition of device; the language of the statute does not state that it is the **use** to which the telephone is being put which determines if it is considered a device.  We reject the statement by the Superior Court, that only **certain uses** of a telephone may exempt the telephone from being considered a device, as being contrary to the plain language contained in the definitional section of the Wiretap Act.  Accordingly, we hold that a state trooper does not violate the Wiretap Act when he listens through the speaker on an informant's cellular telephone as the informant arranges a drug deal.

*Id.* (emphasis in original; citation omitted).

Smith seizes upon the preceding language to assert that, "[u]nder *Spence*, any use of a telephone to 'intercept' a conversation is exempted from the Wiretap Act."  Smith's Brief at 14.  He emphasizes the Court "could have provided specific examples of what 'uses of a cell phone' would not be exempt from the definition of device," but it did not do so.  *Id.* at 15.  Smith further states, in the absence of any "significant advances to cell phone

technology" in the months since **Spence** was decided, we are "left with a ruling from the Pennsylvania Supreme Court that exempts cellphones, and any use thereof, from the definition of device." *Id.*

We find the holding in **Spence** is not as expansive as Smith proposes. Despite the Supreme Court's statement that the statute exempts telephones from the definition of an interception device **regardless of their use**, we must bear in mind that the cell phone at issue in **Spence** was **used as a telephone**. Indeed, the Trooper listened to – but did not record – the telephone conversation between the informant and the defendant *via* the informant's cell phone's speaker function. As the Commonwealth notes in its brief: "The Trooper was akin to an eavesdropper overhearing a conversation between two other individuals." Commonwealth's Brief at 15. However, in the present case, Smith did not use his smartphone as a telephone. Rather, he essentially used "a 'tape recorder' on his 'mini computer.'" *Id.* at 17. Accordingly, we find **Spence** distinguishable on its facts.

Smith also relies upon the recent decision of this Court in **Commonwealth v. Diego**, 119 A.3d 370 (Pa. Super. 2015), to support his position. In that case, police detectives traced stolen guns to an individual named Gary Still. Still told the detectives he traded several of those guns to the defendant in exchange for heroin, and agreed to set up a heroin purchase with the defendant. He did so using a text messaging service on his iPad tablet computer. Still relayed the messages he received from the defendant to the detectives, who were standing nearby. When the

defendant appeared for the sale, the detectives arrested him. *Id.* at 372-373.

The trial court subsequently granted the defendant's motion to suppress based on violations of the Wiretap Act. On appeal, the Commonwealth argued, *inter alia*, that Still's iPad was not a "device" under the Act.[8] Specifically, the Commonwealth asserted that, because Still used a text messaging feature on his iPad, which he sent *via* his cell phone service provider, the iPad was "the functional equivalent of a telephone under the statutory definition set forth in Section 5702." *Id.* at 375.

A panel of this Court disagreed, explaining:

> The *Spence* decision did not in any way broaden the telephone exception to the definition of what constitutes an "electronic, mechanical, or other device" under the Wiretap Act. An iPad is not a telephone or telegraph instrument under a common understanding of the relevant terms, and no reasonable person familiar with the now ubiquitous technology of tablet computers would misidentify an iPad as a mere telephone. The fact that an iPad or any other tablet computer can perform functions similar or identical to a modern cellular phone is not dispositive, as the *Spence* Court's holding implies. The trend of convergence between modern computers and telephones aside, at this time the technologies in question remain different not only by degree, but also in kind.

*Id.* The panel also declined to "so radically expand the definition of 'telephone' under the Wiretap Act … without the benefit of further legislative

---

[8] Interestingly, we note that in both *Spence* and *Diego*, the Commonwealth took the same position as Smith does in the present case, asserting the cell phone in *Spence* and the iPad in *Diego* were exempted from the definition of interception "devices."

input." *Id.* at 376. The Court commented: "it is, at best, a dubious proposition that the authors of the 1978 Wiretap Act intended 'telephone' to include iPads, as the first tablet computers were not invented until the late 1980's." *Id.*

Smith argues, here, the trial court's decision, similarly, did not broaden the definition of "device" under the Act. Smith's Brief at 16. Rather, Smith's use of the "voice memo" app on his cell phone to record the conversation with Mojdeh fell within the exemption in the definition of "device" for "[a]ny telephone … or any component thereof[.]" 18 Pa.C.S. § 5702.

Again, we conclude Smith has extracted a broader holding from *Diego* than this Court intended. The facts in *Diego* were clear. The "device" used to intercept the communication at issue was an iPad tablet computer, not a telephone. Therefore, the "device" did not fall within the exemption for "telephones" under Section 5702. While the "device" at issue herein was a cell phone, it was not being used, by any measure, as a telephone. Therefore, we find the decision in *Diego* distinguishable.

Lastly, Smith warns of the danger of characterizing his use of his cell phone in the present case as a violation of the Act. He notes Section 5705 of the Wiretap Act prohibits a person from "[i]ntentionally possess[ing] an electronic, mechanical or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of a wire, electronic or oral communication."

18 Pa.C.S. § 5705(1). He argues, "[i]f the Act, particularly the term 'device[']' is interpreted by this Court to include a cellular phone's voice recording feature then every person in possession of an iPhone in Pennsylvania would arguably be in violation of the Act." Smith's Brief at 17.

We disagree. If Smith's fears were justified, every person who possessed a **tape recorder** would be in violation of the Act. That is simply not the case. A "voice memo" app on an iPhone is not designed to be "**primarily useful** for the purpose of the **surreptitious interception** of a wire, electronic or oral communication." 18 Pa.C.S. § 5705(1) (emphasis supplied). Accordingly, Smith's argument fails.

We reiterate that, "[g]enerally, the Wiretap Act prohibits the interception, disclosure, or use of any wire, electronic, or oral communication." *Commonwealth v. Kuder*, 62 A.3d 1038, 1044 (Pa. Super. 2013), *citing* 18 Pa.C.S. § 5703, *appeal denied*, 114 A.3d 416 (Pa. 2015). To that end, Smith does **not** contend that, if he had surreptitiously recorded his conversation with Mojdeh using a **tape recorder**, he would not have violated Section 5703.[9] Furthermore, it is clear that had Smith spoken

_____

[9] Indeed, as the Commonwealth proposes, "[i]t would be entirely unreasonable to interpret the Act in such a way that an individual who records a conversation on a tape recorder, or other similar device would be held criminally liable, while that same person recording a conversation on a smart phone application would not be sanctioned." Commonwealth's Brief at 14.

with Mojdeh on his telephone, and recorded the conversation on an answering machine, he would also have committed a violation of Section 5703. **See Deck**, **supra** (holding trial court properly precluded introduction of sexual assault victim's audio recording of telephone conversation with defendant; Section 5703 prohibits interception of wire communications without the speaker's knowledge).

Nevertheless, the facts of this case present a different scenario, created, in part, by the technological advances of today's cellular phones. Indeed, the United States Supreme Court has observed:

> The term "cell phone" is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.

**Riley v. California**, 134 S. Ct. 2473, 2489 (U.S. 2014) (holding police must secure a warrant before searching data on cell phone seized incident to arrest). Accordingly, we find that, although Smith used **an app on his smartphone**, rather than a concealed tape recorder, to surreptitiously record his conversation with Mojdeh, the result is the same. His actions constituted a violation of Section 5703.

Because we conclude the trial court erred when it determined that Smith's use of a "voice memo" app on his smartphone did not constitute an interception "device" under the Wiretap Act, we are constrained to reverse

the order of the trial court granting Smith's request for *habeas corpus* relief, and remand for further proceedings.[10]

Order reversed, and case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/19/2016

---

[10] We decline to comment on the decision of the Commonwealth to prosecute Smith for his actions, which, by all accounts, appear to have been taken to protect his job and opportunities for future employment.