J-S59025-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DORRELL ANTWUN McLAURIN, | : | |
| | : | |
| Appellant | : | No. 288 WDA 2015 |

Appeal from the Judgment of Sentence January 28, 2015,
Court of Common Pleas, Erie County,
Criminal Division at No. CP-25-CR-0000508-2014

BEFORE:  BOWES, DONOHUE and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED OCTOBER 20, 2015**

Dorrell Antwun McLaurin ("McLaurin") appeals from the January 28, 2015 judgment of sentence entered by the Erie County Court of Common Pleas following his convictions of three counts of possession of a controlled substance (marijuana, cocaine and ecstasy, respectively), three counts of possession with intent to deliver a controlled substance ("PWID") (marijuana, cocaine and ecstasy, respectively), and one count of possession of drug paraphernalia.[1]  Upon review, we affirm.

The trial court aptly summarized the facts of this case as follows:

> The genesis of these charges occurred on December 18, 2013 at approximately 6:00 a.m., when City of Erie Police Officers, with the assistance of the Erie SWAT Team and other agencies, served a search warrant at 941 East 23rd Street, Erie, Pennsylvania. *Trial Transcript, Day One, November*

---

[1]  35 P.S. § 780-113(a)(16), (30), (32).

*Former Justice specially assigned to the Superior Court.

*18, 2014 ("T.T. 1"), pp. 31 -33.* The residence was owned by Joune McLaurin. *[Id. at] 100*. [Joune] McLaurin was not present during the search and was not called as a witness at trial.

The search warrant was obtained on December 18, 2013, following two controlled buys of marijuana at the residence. The first controlled buy was performed within two weeks of issuance of the search warrant; the second buy was performed within 48 hours of issuance of the warrant. *[Id. at] 84-86; Trial Transcript, Day Two, November 19, 2014 ("T.T. 2"), p. 7*. Each controlled buy was for $60.00. *T.T. 2, p. 8*. Detective Michael Chodubski, Erie Police Department Drug and Vice Unit, an expert in vice and narcotics investigations and lead detective in this case, was involved with the controlled buys and the subsequent issuance and execution of the search warrant on December 18, 2013. Detective Chodubski made photocopies of the currency used for the controlled buys. *T.T. 1, pp. 80 -83, 86*.

On the morning of December 18, 2013, the police announced their presence and intent to search the residence, and knocked on the door. As there was no response, officers forced entry through the front and rear doors. *[Id. at] 34-37*. [McLaurin] was brought downstairs from the second floor by SWAT Team officers. [McLaurin] was wearing boxer shorts and a tank shirt. He was accompanied by a female, Honey Lucas, who was believed to be [McLaurin]'s girlfriend. Also in the residence were Lucas' four children, and another individual, James Dunlap. Dunlap was in the front TV room. *[Id. at] 38-41; 56- 57*.

The police assisted [McLaurin] in getting [McLaurin]'s diabetes medication, his breakfast, and his clothing [from a laundry basket containing folded clothes] so he could dress. *[Id. at] 40-42*. …

- 2 -

The parties stipulated [that] a total of 35.02 grams of marijuana was found in the residence. *[Id. at] 101*. The marijuana consisted of 34.14 grams of marijuana found in two knotted sandwich baggies in a pair of jeans in the master bedroom upstairs, and a small bag of marijuana in a kitchen cupboard. *[Id. at] 50; 88; 91; 101*. The street value of homegrown marijuana was from $1,500.00 to $2,000.00 per pound; the street value of any medical grade marijuana was from $5,000.00 to $6,000.00 per pound. *T.T. 2, p. 34*.

The parties stipulated [that] fifty-eight ecstasy tablets weighing 18.33 grams were found in a Twinkie box in a kitchen cupboard. *T.T. 1, pp. 89; 101*. The street value of the ecstasy was from $10.00 to $20.00 per pill, or from $580.00 to $1,160.00 for all the pills recovered. *[Id. at] 105*.

The parties stipulated [that] cocaine weighing a total of 15.09 grams was recovered during the search. *[Id. at] 90; 101*. A bag of crack cocaine and shake was found in a kitchen cupboard, next to the ecstasy pills and the small bag of marijuana. *[Id. at] 90 -91*. Three knotted baggies containing cocaine were found in an orange pill bottle under the mattress of a child's bed, in a child's bedroom which adjoined the master bedroom upstairs. *[Id. at] 42 - 45; 90, 92*. The police found a book bag in the master bedroom which contain[ed] a knotted baggie holding a white powdered substance, and numerous food storage bags containing marijuana residue. *[Id. at] 51; 62-63*. The street value of the cocaine was approximately $100.00 per gram, or $1,500.00. *T.T. 2, p. 34*.

Cash totaling $6,036.00 was seized from the residence. $5,000.00 was found inside a Crown Royal bag, which was found inside the pocket of a Yale Bulldog college-type jacket hanging from the door adjoining the master bedroom and the child's bedroom room. The $5,000.00 was ["]stacked,["] or bundled together in thousand dollar increments. *T.T.*

*1, p. 45-47*. The size of the men's jacket and men's clothing was consistent with [McLaurin]'s size and shape. *[Id. at] 67*.

The sum of $1,036.00 was found in [McLaurin]'s black leather wallet, on the floor of the master bedroom, next to the adult clothing. Eighty dollars ($80.00) of the money in [McLaurin]'s wallet was Erie Police Department "buy money" from the previous controlled purchases of marijuana at the residence. *[Id. at] 61 -62; 97 -98; T.T. 2, p. 36*. The police determined this based on the photocopies of the currency used for the previous controlled drug purchases. *T.T.. 2, p. 97*. The wallet also contained [McLaurin]'s identification card, and medical cards for [McLaurin] and the children. *T.T. 1, pp. 47-49*.

Weapons and ammunition were also found in the residence. The police found a loaded firearm, a Ruger P95 9mm semiautomatic pistol, under the mattress in the master bedroom. *[Id. at] p. 49*. A Ruger P85 9mm gun was found in the kitchen cupboard, next to the crack cocaine, ecstasy pills, and marijuana. *[Id. at] 91*. A Smith and Wesson Model MP15-22 AR rifle loaded with a magazine of 24 rounds was found under the mattress of the small child's bed, along with the baggies of cocaine contained in the orange pill bottle. *[Id. at] 91 -92*. Ammunition was found in a third bedroom. *[Id. at] 93*. A Camel 12-gauge shotgun was found in the basement. *[Id.]* A box of Winchester Superior .22 caliber ammunition was found in a kitchen cupboard. *[Id. at] 94*. A spent 9mm casing was found on the kitchen floor. *[Id.]*

Additional items, including the following, were recovered from the residence: a food storage bag containing marijuana residue, labeled "Larry OG[,]" which was found in the kitchen, *[Id. at] 51 -52; 63*; a red container, labeled "King Louis OG 23 percent total cannabinoids for medical use only[,]" which was found in a kitchen cupboard, *[Id. at] 96*; and four brand-name cell phones, which were found in the

living room. *[Id. at] 53; 65*. A digital scale was found on the living room floor. *[Id. at] 53, 64*. A trash collection bill addressed to [McLaurin] at the residence was found in kitchen cupboard, next to the drugs. The due date on the bill was August 26, 2013, approximately four months prior to the search. *[Id. at] 96*. A box of Glad sandwich baggies, and smaller, tear apart Ziploc Apple Baggies with the print of a crown on them, were found in the same kitchen cupboard. *[Id. at] 95-96; 99*.

[McLaurin] was arrested. At the police station, [McLaurin] admitted to Detective Chodubski that everything found in the residence belonged to him, including the drugs and the guns. *[Id. at] 107*.

Trial Court Opinion, 6/4/15, at 1-5.

The day before trial commenced, McLaurin filed a motion in limine seeking to exclude, inter alia, evidence of the firearms and buy money discovered during the search of the home. The trial court denied the motion.

Thereafter, a two-day jury trial commenced, at which the Commonwealth presented the above-summarized information. McLaurin presented one witness – his mother – who testified, in relevant part, that he resided with her at 712 Chestnut Street; she knew nothing about 941 East 23rd Street; and she did not know anyone named Joune McLaurin.

On November 19, 2014, a jury convicted McLaurin of the aforementioned charges. The trial court sentenced him on January 28, 2015 to an aggregate term of eighteen to sixty months of incarceration, followed by one year of probation.

This timely appeal followed. McLaurin raises one issue for our review: "Whether the trial court abused its discretion by admitting irrelevant evidence involving weapons and marked U.S. currency since the prejudicial impact of that evidence outweighed any probative value?" McLaurin's Brief at vi.

We review challenges to the admissibility of evidence according to the following standard:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

**Commonwealth v. Montalvo**, 986 A.2d 84, 94 (Pa. 2009) (internal citations omitted), *cert. denied*, 562 U.S. 857 (2010).

We begin by addressing the trial court's admission of the marked Erie Police Department buy money found in McLaurin's wallet. The record reflects that Detective Chodubski testified that prior to the execution of the search warrant at 941 East 23rd Street, a confidential informant working with the Erie Police Department made two controlled buys of marijuana at that location – one within two weeks of the search, the other within forty-eight hours of the search. N.T., 11/18/14, at 84-86. Prior to the controlled buys occurring, Detective Chodubski photocopied each of the dollar bills that

the confidential informant would use to purchase the drugs. *Id.* at 86. Detective Chodubski further testified that when police conducted the search of 941 East 23rd Street, they found $1036 in McLaurin's wallet, $80 of which was marked money used in the controlled buys. *Id.* at 97.

McLaurin argues that by permitting the admission of evidence that he possessed money from the controlled buys, the trial court impermissibly permitted evidence of McLaurin's prior bad acts. McLaurin's Brief at 17-18. The trial court found the evidence was admissible as "it tended to establish [McLaurin]'s intent to deliver drugs, and the evidence was sufficiently linked to [McLaurin] to warrant its admission." Trial Court Opinion, 6/4/15, at 13 (citing *Commonwealth v. Matthews*, 609 A.2d 204, 206, 207 (Pa. Super. 1992)). We agree.

Pennsylvania Rule of Evidence 404(b) precludes the use of other crimes, wrongs, or acts to prove the defendant's culpability for the instant crime. Pa.R.E. 404(b)(1). Such evidence may be admissible, however, for other purposes, including but not limited to "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

As the trial court recognizes, this Court has previously decided the question of the admissibility of evidence regarding a controlled buy in a

prosecution for PWID where the defendant is not being charged with any crimes related to the controlled buy. *See, e.g., Matthews*, 609 A.2d at 206-07; *Commonwealth v. Washington*, 573 A.2d 1123, 1126 (Pa. Super. 1990). In determining whether evidence of a controlled buy is admissible to show the defendant's intent for a PWID charge, courts must consider "whether there was sufficient quantum of proof linking [the defendant] with the uncharged criminal act so as to make it relevant to the question of [the defendant]'s intent." *Washington*, 573 A.2d at 1126.

> To keep sight of the underlying policy of protecting the accused of unfair prejudice, courts must balance the actual need for the other crimes evidence in the light of the issues, the evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, the strength or weakness of the other crimes evidence in supporting the issue, and the degree to which the jury will probably be roused by the evidence to over-mastering hostility.

*Id.* (citation omitted).

Applying the above balancing test in the case at bar, we conclude that Detective Chodubski's testimony about the controlled buys was properly admitted into evidence. Beginning with the first element, we note that there was some evidence available to the prosecution to prove that McLaurin possessed the drugs with the intent to deliver, e.g., the presence of a digital scale, drug packaging materials, large amounts of cash, and guns in the home. *See Matthews*, 609 A.2d at 206 (referring to scales, drug packaging

materials and a loaded handgun as indicia of drug dealing); N.T., 11/18/14, at 103, 105-06. Although Detective Chodubski testified that the amount of ecstasy and cocaine found in the home was inconsistent with personal use, he admitted that the amount of marijuana found in the home – approximately thirty-five grams – could have been for personal use, as the amount of marijuana found was only slightly more than what the law considers "a small amount of marijuana." *Id.* at 103-05; *see* 35 P.S. § 780-113(a)(31) (identifying thirty grams of marijuana as "a small amount"). Thus, we conclude, as we did in **Matthews**, that "since the quantity of the … marijuana might not be so great as to raise a reasonable inference of 'intent to deliver[,]' … such evidence [was] needed (although not absolutely necessary) to establish [the defendant]'s intent to deliver." **Matthews**, 609 A.2d at 206.

Turning to the second and third elements of the test, the record reflects that the controlled buys took place at 941 East 23rd Street and were close in time to the execution of the search warrant. N.T., 11/18/14, at 85-86. Detective Chodubski photocopied each dollar bill the confidential informant used to purchase the drugs. *Id.* at 86. When executing the search warrant, police found $80 of the marked buy money in McLaurin's wallet. *Id.* at 97. As McLaurin admitted that the marijuana belonged to him, the evidence that he possessed the buy money convincingly ties him to

the sale of the marijuana to the confidential informant and strongly supports a finding that McLaurin possessed the marijuana with the intent to deliver.

Addressing the final element of the test, McLaurin does not argue, and we have no basis to conclude, that evidence that he sold marijuana to a confidential police informant would "rouse[ the jury] to over-mastering hostility." **Washington**, 573 A.2d at 1126. The record reflects that Detective Chodubski did not go into any unnecessary detail about the controlled buys, limiting his testimony to relevant information concerning the fact that the controlled buys occurred, the police recorded the money used in the buys, and the recorded money was found in McLaurin's possession.

The evidence of McLaurin's possession of marked money was relevant to prove McLaurin's intent with respect to his possession of the marijuana found at the residence. Furthermore, we conclude that the probative value of this evidence was high and outweighed the potential for unfair prejudice. **See** Pa.R.E. 404(b)(2). As McLaurin acknowledges, Detective Chodubski testified that McLaurin admitted that he possessed the marijuana. McLaurin's Brief at 14; N.T., 11/18/14, at 107. Therefore, assuming the jury found Detective Chodubski's testimony credible, the sole question before the jury was whether McLaurin possessed the drugs with the intent to deliver. Although, as stated above, the Commonwealth presented evidence that supported an inference that McLaurin did not have the marijuana solely for personal use, there was other evidence that weighed against such a finding

as well. As such, evidence that he sold marijuana to the confidential informant was needed to establish his intent to deliver. *See Matthews*, 609 A.2d at 206. We therefore conclude that the trial court did not abuse its discretion by permitting the Commonwealth to present evidence of the controlled buys.

McLaurin further argues that the trial court abused its discretion by permitting the Commonwealth to present evidence that the police found guns when executing the search warrant. McLaurin's argument is based in part upon his assessment "that at all times relevant to these proceedings, there were almost daily reports of shootings" in Northwestern Pennsylvania, which he contends would have prejudiced the jury in their deliberations. McLaurin's Brief at 15-16. As McLaurin recognizes, however, this argument was not raised before the trial court. *Id.* at 15. Therefore, it is waived. *See Commonwealth v. Murray*, 83 A.3d 137, 159 (Pa. 2013) ("preservation of the specific argument in support of the ground for reversal is required for appellate review") (citation omitted); Pa.R.A.P. 302(a).

McLaurin further urges us to "view this matter as the admission of evidence of other crimes, wrongs or acts." McLaurin's Brief at 17-18. However, it is neither wrong nor illegal to possess a firearm. As there was no evidence presented at trial that McLaurin's possession of the firearms in question was unlawful, we cannot evaluate the admission of this evidence as

being that of a crime, wrong or bad act. *See Commonwealth v. Dean*, 693 A.2d 1360, 1367 (Pa. Super. 1997).

We therefore review this matter under traditional principles of admissibility. In this respect, McLaurin states that there was no evidence tying him to the guns, i.e., no fingerprints found on the guns, and thus, there was no "real or actual link" between McLaurin and the guns. McLaurin's Brief at 15. Therefore, McLaurin asserts that "the introduction of testimony concerning the weapons would have only had the impact of prejudicing the jury in determining whether the Commonwealth had met its burden of proof with regard to [PWID] of the three separate drug felony charges." *Id.* In advancing this argument, McLaurin ignores the evidence presented that he admitted to Detective Chodubski that "everything found in the residence is mine." N.T., 11/18/14, at 107. Detective Chodubski testified that he specifically followed up and asked if the guns belonged to McLaurin, and McLaurin responded, "yes." *Id.*

Furthermore, the record reflects that Detective Chodubski testified, without objection, as an expert in the field of vice and narcotics investigations. *Id.* at 80-81. He testified that in his expert opinion, the controlled substances recovered from the house were possessed with the intent to deliver and were not for personal use. *Id.* at 102. One of the bases for this opinion was that there were multiple firearms found in the home:

> Drug dealing is a cash business, and as you all know, there's home invasions that happen all the time, and drug dealers need to protect their proceeds from what they deal. And that's their main way to protect themselves is the firearms. And in this incident, there were five. There was [sic] five guns that were found, not all of them loaded, but all were functional.

*Id.* at 105.

"Evidence is admissible in a criminal case if it logically or reasonably tends to prove or disprove a material fact in issue, tends to make a fact more or less probable, or if it is a basis for or supports a reasonable inference or presumption regarding the existence of a material fact." ***Dean***, 693 A.2d at 1367; Pa.R.E. 401, 402. Furthermore, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Pa.R.E. 703.

The evidence of the guns was relevant to prove a material fact; here, that McLaurin possessed the drugs with the intent to deliver. Detective Chodubski relied in part upon the presence of firearms in the home in arriving at his expert opinion that McLaurin possessed the controlled substances found in the home with the intent to deliver. We therefore find no abuse of discretion in the trial court's admission of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2015