J-S23023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMAR S. HARRISON | : | |
| | : | |
| Appellant | : | No. 2936 EDA 2024 |

Appeal from the PCRA Order Entered October 2, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0007067-2017

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 28, 2025**

Omar S. Harrison (Appellant) appeals from the order dismissing his first petition timely filed pursuant to the Post Conviction Relief Act (PCRA). *See* 42 Pa.C.S.A. §§ 9541-9546. Appellant asserts his prior counsel rendered ineffective assistance that undermined the validity of his jury convictions of various sex offenses. After careful examination, we affirm.

The PCRA court concisely summarized the factual history in its opinion:

[At the time of Appellant's crimes in 2017, he was 41 years old and] employed as the Dean of [Students at] Harrity Elementary School[, located in Philadelphia. Appellant] began an inappropriate relationship with a 14-year-old[,] 8th grade student[, Z.R. (the victim). Appellant] gained the trust of the victim by driving her home from school and communicating with her over social media platforms and on the telephone. Ultimately, [on June 12, 2017, Appellant] took the [] victim to [an] Econo Lodge [(the motel), located] in Delaware County, where he proceeded to have sex with her. This was discovered in October of 2017[,] when the victim's mother[, A.G.,] discovered messages [exchanged between Appellant and the victim on Instagram, a

social media platform].

PCRA Court Opinion, 11/22/24, at 1.

In October 2017, the Commonwealth charged Appellant with, *inter alia*, two counts of involuntary deviate sexual intercourse (complainant less than 16 years of age), and one count each of statutory sexual assault, institutional sexual assault, indecent assault, and corruption of minors.[1] Following a procedural history that is irrelevant to the instant appeal, the matter proceeded to a jury trial in November 2018.[2] Appellant was represented by Laurence Narcisi, Esquire (trial counsel). At trial, the Commonwealth presented testimony from four witnesses: (1) the victim; (2) A.G.; (3) the general manager of the motel; and (4) the lead police investigator, Tinicum Township Police Sergeant James Simpkins, Jr. (Sergeant Simpkins). Appellant did not testify or call any witnesses in his defense.

Certain trial testimony from A.G. and Sergeant Simpkins is relevant to this appeal.[3] Sergeant Simpkins testified that after A.G. reported her discovery of the inappropriate Instagram messages between Appellant and

---

[1] 18 Pa.C.S.A. §§ 3123(a)(7), 3122.1(b), 3124.2(a.2)(1), 3126(a)(8), 6301(a)(1)(ii).

[2] The Court of Common Pleas judge who presided at trial, the Honorable Judge Anthony D. Scanlon, also presided over the instant PCRA proceedings.

[3] This Court previously detailed the testimony of all trial witnesses in connection with Appellant's direct appeal, which we discuss below. ***See Commonwealth v. Harrison***, 242 A.3d 455, 2020 Pa. Super. Unpub. LEXIS 3702 (Pa. Super. 2020) (unpublished memorandum at 4-8).

- 2 -

the victim, Sergeant Simpkins traveled to A.G.'s residence to take custody of the computer tablet on which A.G. had discovered the messages. N.T., 10/31/18, at 162. Shortly thereafter, but before obtaining an arrest warrant for Appellant, Sergeant Simpkins traveled to Appellant's residence to attempt to interview him. *Id.* at 163. Sergeant Simpkins testified he was accompanied by a detective from the police department that serviced the area in which Appellant resided, Cheltenham Township, Pennsylvania. *Id.*; *see also id.* (Sergeant Simpkins stating, "I think his name is Detective McLain").

Upon arriving at Appellant's residence, Sergeant Simpkins, accompanied by the other officer knocked on Appellant's door. *Id.* A young boy opened the door and confirmed that his father, *i.e.*, Appellant, was home. *Id.* Appellant came to the door shortly thereafter. *Id.* Sergeant Simpkins introduced himself and the other officer, and asked Appellant, "I imagine you know why I'm here[?]" *Id.* Appellant nodded his head in agreement. *Id.* Sergeant Simpkins inquired whether Appellant was willing to speak with police; Appellant agreed,[4] stating, "Is it okay if we speak outside?" *Id.*; *see also id.* (Sergeant Simpkins explaining that there was an "open porch"

---

[4] Importantly to this appeal, trial counsel did not file a motion to suppress Appellant's statements to police. Moreover, it is undisputed that, at the time of his statements, Appellant (1) was not under arrest or in handcuffs; and (2) had not been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444, 473-74 (1966) (holding that a defendant subject to custodial interrogation must be advised of his constitutional right to remain silent and the right to counsel, to protect his right against compulsory self-incrimination).

attached to Appellant's residence). Appellant directed the officers to the porch, where the conversation occurred. *Id.*

Sergeant Simpkins asked Appellant, "[C]an you tell me about … why you think I'm here?" *Id.* Appellant responded that "he was made aware of the allegations that the victim had" advanced against him. *Id.* at 164. Sergeant Simpkins asked Appellant whether he "ever had any inappropriate contact with [the victim?]" *Id.* According to Sergeant Simpkins, "[Appellant] said he had had inappropriate messages back and forth … on Instagram." *Id.* Sergeant Simpkins then asked Appellant whether he had "ever taken [the victim] off campus," "meaning the [] school[?]" *Id.* at 165. Appellant replied that "[the victim] had gotten to him and that he had taken her one time to the [motel]. And … [Appellant] also said that he never took her inside" the motel. *Id.* Sergeant Simpkins then asked Appellant whether he had taken anyone else to the motel. *Id.*; *see also id.* (Sergeant Simpkins explaining that, based upon his investigation, he "was already aware that [Appellant] had been registered" as a guest at the motel on "at least three" separate dates). Appellant replied that he had taken a separate, adult female to the motel, with whom he was having an extramarital affair, and provided Sergeant Simpkins her name and phone number. *Id.* at 165-66.

On cross-examination, Sergeant Simpkins confirmed that Appellant was not under arrest at the time of his statements to police at his residence. *Id.* at 210. Regarding Appellant's statements, trial counsel asked Sergeant

Simpkins, "What did you take the phrase [Appellant used,] 'she got to me' to mean?" *Id.* Sergeant Simpkins responded, "[t]hat [the victim] got to [Appellant] in a … sexual type of way, like a girlfriend, like … she had been coming on to him." *Id.*; *see also id.* (Sergeant Simpkins confirming that "[Appellant] denied having sexual relations with [the victim.]").

We next summarize A.G.'s relevant trial testimony. During cross-examination, the following exchange occurred:

Q. [Trial Counsel:] … The day after [the victim] was dropped off [at her residence by Appellant, following the incident at the motel on June 12, 2017], did you notice anything special or different about her?

A. [A.G.:] No.

Q. All right. Did she appear to be in pain?

A. No, but a day or two after that she said something about her vagina.

Q. What?

A. That her -- that her vagina was hurting.

Q. Okay. Did you follow up on that?

A. Yes, I did. I made her a doctor's appointment.

Q. Oh, and when was this?

A. After the situation.

Q. Okay. And as a result of this exam -- when was this examination?

A. I don't recall exactly when.

Q. Okay. But did you tell the detectives about this examination?

A. Yes, I did.

Q. Oh, okay.  … And so the detectives have the name and the address of this doctor, correct?

A. Absolutely.

*Id.* at 302-03 (formatting modified).[5]

Subsequently, the Commonwealth rested its case-in-chief, after which the trial court dismissed the jury for the day.  *Id.* at 324-25, 328.  Trial counsel then moved for a mistrial, asserting as follows:

> [Trial counsel]: Judge, I have a motion for mistrial based on discovery [] violations.  … [T]his was absolutely a blindsided shot regarding any indication of any kind of prompt medical attention or medical treatment in this case….  I … understand and I absolutely give full credit to [Sergeant Simpkins] regarding his sincerity in his responses that [the police failure to disclose any evidence related to medical treatment the victim received] was an oversight.[6]  Nevertheless, to have[,] in the second day of trial[,] this evidence come out when … [there previously had not been] even the slightest mention of it, I mean, it completely changes the tone and tenor of the entire trial.

*Id.* at 328 (footnote added); *see also id.* at 332 (trial counsel complaining that the defense's "ability to confront and examine [witnesses] was limited by the fact that [trial counsel] had no knowledge of … [the victim's] potential medical treatment.").  Trial counsel cited Pa.R.Crim.P. 573 (governing pretrial

---

[5] On direct examination, A.G. made no reference to the victim complaining of pain following the incident at the motel, or taking the victim for medical examination.

[6] We detail *infra* Sergeant Simpkins's testimony regarding the victim's medical records.

- 6 -

discovery) and **Brady v. Maryland**, 373 U.S. 83 (1963) (holding that due process prohibits the prosecution from suppressing evidence material to guilt or punishment). N.T., 10/31/18, at 330. In response to the mistrial motion, the prosecutor maintained she also "wasn't aware of the [victim's] medical treatment[.]" **Id.** at 332. The trial court announced it would defer ruling on the motion until the beginning of the next day of trial. **Id.** at 332-33.

Thereafter, "[the victim's] medical records were obtained by the Commonwealth overnight and provided to trial counsel." PCRA Court Opinion, 11/22/24, at 5; **see also** N.T., 11/5/18, at 4 (trial counsel stating, at the beginning of the next day of trial, that "the Commonwealth presented [the victim's] medical records" to the defense, and renewing Appellant's motion for a mistrial). In opposition to the mistrial motion, the prosecutor stated as follows:

> [I]n regards to a **Brady** violation, Commonwealth [originally] had no materials in its possession [concerning the victim's medical treatment]…. [The Commonwealth recently] got the records and … provided them to the [d]efense….

N.T., 11/5/18, at 4.

The trial court denied Appellant's motion for a mistrial, noting it was an "extreme remedy." **Id.** at 5. The court stated that, regarding Appellant's claim of a

> **Brady** violation, the [c]ourt… does not find [that the] … documents [related to the victim's medical treatment] were in the custody or control of the Commonwealth. They were disclosed late to the Commonwealth and the Commonwealth has made its best efforts to produce this to [the d]efense….

*Id.* at 6.  Trial then resumed, and the defense rested its case.  *Id.* at 7-8.

The prosecutor moved to reopen the Commonwealth's case to present additional testimony from Sergeant Simpkins, which the trial court granted. *Id.* at 8.  Sergeant Simpkins testified on direct examination that he attempted to obtain the victim's medical records in the beginning of the investigation, and repeatedly asked A.G. to provide access to them, but A.G. failed to cooperate.  *Id.* at 9-10; *see also id.* at 15-16 (Sergeant Simpkins stating on cross-examination that he twice asked A.G. to provide the information). Sergeant Simpkins explained that only recently was he able to obtain the victim's medical records, when he "went down to the Greater Philadelphia Health Action" office and subpoenaed them.  *Id.* at 11.

The trial court admitted the victim's medical records, without redaction, as Exhibit C-17.  *Id.* at 12.  Sergeant Simpkins testified that C-17 stated that the victim sought medical treatment from her primary care physician on June 22, 2017 (*i.e.*, ten days after the incident at the motel), "for sinus symptoms" (as opposed to pain in her genitals).  *Id.* at 13; *see also* Exhibit C-17, at 1 (unpaginated) (medical record stating the victim presented complaining of severe "[s]inus symptoms").  On cross-examination, trial counsel emphasized that the victim's medical records conflicted with A.G.'s trial testimony that she took the victim for medical treatment for pain in her genitals, asking Sergeant Simpkins, "[C]an we agree that a sinus problem is not vaginal soreness?"  *Id.*

at 16. Sergeant Simpkins conceded, "I think we can." ***Id.*** Trial counsel had no further questions, and the Commonwealth then rested its case. ***Id.*** at 17.

During Appellant's closing argument, trial counsel extensively referenced the late disclosure of the victim's medical records, and the fact that they were inconsistent with A.G.'s trial testimony regarding the reason for which the victim sought medical treatment. ***See id.*** at 19-21.

The jury found Appellant guilty of the above-mentioned offenses. On March 25, 2019, the trial court sentenced Appellant to an aggregate 153 to 306 months in prison.[7] Appellant filed a post-sentence motion to modify sentence, asserting it was unduly harsh and excessive, which the trial court denied.

Appellant subsequently filed a direct appeal through new, appointed counsel, Patrick Connors, Esquire, and Richard Blasetti, Esquire (collectively, direct appeal counsel). On appeal, Appellant challenged (1) certain trial court evidentiary rulings and statements by the prosecutor at trial; (2) the sufficiency of the evidence; and (3) the discretionary aspects of sentencing.[8]

---

[7] Appellant's convictions also rendered him a Tier III offender pursuant to the Sexual Offender Registration and Notification Act, subjecting him to lifetime registration and reporting requirements. ***See*** 42 Pa.C.S.A. §§ 9799.10 - 9799.41. The trial court found Appellant did not qualify as a sexually violent predator.

[8] Direct appeal counsel did not challenge, in Appellant's direct appeal, the denial of the mistrial motion asserting a ***Brady*** violation.

This Court affirmed the judgment of sentence on November 25, 2020. *See*

*generally Harrison*, 242 A.3d 455 (unpublished memorandum).[9]

On June 16, 2021, Appellant timely filed the instant, *pro se* PCRA

petition,[10] his first. The PCRA court appointed Scott Galloway, Esquire (PCRA

counsel), to represent Appellant.[11] On February 3, 2022, PCRA counsel filed

an amended petition raising two claims of ineffectiveness of Appellant's prior

counsel: (1) trial counsel's failure to file a motion to suppress Appellant's non-

*Mirandized* statements to Sergeant Simpkins given at Appellant's residence;

and (2) direct appeal counsel's failure to raise a requested challenge, on direct

appeal, to the trial court's denial of Appellant's mistrial motion asserting a

*Brady* violation. *See generally* Amended PCRA Petition, 2/3/22. Appellant

---

[9] Though Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court, the Court discontinued the matter on February 16, 2021, upon Appellant's praecipe.

[10] All PCRA petitions must be filed within one year of when the petitioner's judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1); *see also id.* § 9545(b)(3) (providing a judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."). Instantly, Appellant's judgment of sentence became final on February 16, 2021, when he voluntarily discontinued his appeal with the Pennsylvania Supreme Court. *See Commonwealth v. Conway*, 706 A.2d 1243, 1244 (Pa. Super. 1997) (holding an appellant's judgment of sentence became "final when his direct appeal was discontinued at his request."). Accordingly, Appellant's June 16, 2021, PCRA petition is timely.

[11] PCRA counsel also represents Appellant in the instant appeal.

requested an evidentiary hearing[12] to develop his ineffectiveness claims. ***Id.*** at 3 (unpaginated) (Prayer for Relief). On March 28, 2022, the Commonwealth filed an answer to the PCRA petition.

On November 6, 2023, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's PCRA petition without a hearing (Rule 907 Notice). In the Rule 907 Notice, the court rejected Appellant's ineffectiveness claims related to trial counsel and direct appeal counsel. ***See generally*** Rule 907 Notice, 11/6/23. Regarding Appellant's claim of trial counsel's ineffectiveness for failing to file a suppression motion, the PCRA court found that "a motion to suppress [Appellant's] voluntary statements [to Sergeant Simpkins] would have been inappropriate and frivolous, as [Appellant's] statements were voluntary and made at [his] home." ***Id.*** at 4. The PCRA court also rejected Appellant's claim of direct appeal counsel's ineffectiveness based on the denial of Appellant's motion for a mistrial implicating ***Brady***. ***Id.***

_____

[12] Pursuant to Section 9545 of the PCRA, any petition requesting an evidentiary hearing must include a certification by each intended witness outlining the substance of their proposed testimony, and a copy of any material documentary evidence. 42 Pa.C.S.A. § 9545(d)(1)(i) ("Where a petitioner requests an evidentiary hearing, the petition **shall** include a certification signed by each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony." (emphasis added)); ***see also*** Pa.R.Crim.P. 902(A)(15). Instantly, Appellant's petition and amended petition included no such certification.

By order entered October 2, 2024, the PCRA court dismissed Appellant's PCRA petition.[13] This timely appeal followed.[14] The PCRA court issued an opinion on November 22, 2024.

Appellant presents the following issues for our review:

I. Was the [PCRA] court in error[ ]in denying Appellant an evidentiary hearing pursuant to the petition for post[-]conviction relief filed alleging the following as to ineffectiveness of counsel?

   1) Trial counsel failed to file a pretrial omnibus motion seeking to suppress the statements given by [Appellant] to Sergeant Simpkins.

   2) Medical evidence was presented at the time of trial that had not been provided to the defense. Trial counsel made a motion for a mistrial[,] which was denied by the court. [Direct appeal] counsel was asked to include this issue in [Appellant's direct] appeal to the Superior Court of Pennsylvania[,] which [direct appeal] counsel failed to include.

Appellant's Brief at 5 (capitalization modified).

When reviewing the dismissal of a PCRA petition, we examine "whether the PCRA court's ruling is supported by the record and free of legal error. *Commonwealth v. Hereford*, 334 A.3d 903, 907 (Pa. Super. 2025) (*en banc*) (citation omitted). The scope of our review "is limited to the findings of

_____

[13] The October 2, 2024, order stated the PCRA court had reviewed "correspondence from [PCRA] counsel in response to the [Rule 907] Notice[.]" Order, 10/2/24, 1. However, this correspondence is not contained in the certified record, nor was it filed with the PCRA court.

[14] The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." ***Commonwealth v. Conforti***, 303 A.3d 715, 725 (Pa. 2023) (citations omitted); ***see also Commonwealth v. Kapellusch***, 323 A.3d 837, 844 (Pa. Super. 2024) (stating appellate courts "grant great deference to the PCRA court's findings that are supported in the record." (citation omitted)). "[W]e review the PCRA court's legal conclusions *de novo*." ***Commonwealth v. Harper***, 230 A.3d 1231, 1236 (Pa. Super. 2020) (citation omitted).

This Court has recognized that

> [t]here is no absolute right to an evidentiary hearing on a [PCRA] petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. McCready***, 295 A.3d 292, 298 (Pa. Super. 2023) (citation omitted); ***see also Commonwealth v. Williams***, 244 A.3d 1281, 1287 (Pa. Super. 2021) ("It is within the PCRA court's discretion to decline to hold [an evidentiary] hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence." (citation omitted)).

Appellant first claims the PCRA court erred in rejecting his claim of trial counsel's ineffectiveness for failing to move to suppress Appellant's non-***Mirandized*** statements to police at his residence. ***See*** Appellant's Brief at 9-19.

We begin by observing the legal presumption that counsel acted effectively. *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023).

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from[, *inter alia*,] the "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)).

In order to establish a claim of ineffectiveness, a PCRA petitioner must plead and prove three prongs:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987)).

*Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (citations modified); *see also Spotz*, 84 A.3d at 311 ("If a petitioner fails to prove any of [the three ineffectiveness test] prongs, his claim fails." (citation omitted)). Regarding the first prong, if the petitioner's underlying claim lacks arguable merit, his or her derivative claim of counsel's ineffectiveness necessarily fails. *Commonwealth v. Baumhammers*, 92 A.3d 708, 722 n.7 (Pa. 2014); *see also Treiber*, 121 A.3d at 445 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim." (citation omitted)).

Here, Appellant argues trial counsel unprofessionally failed to file a motion to suppress his statements to police at his residence, made during a custodial interrogation and without **Miranda** warnings. **See** Appellant's Brief at 16-19. Appellant claims he "was under custodial detention at the time he left his residence and made the incriminating statements to Sergeant Simpkins[.]" **Id.** at 16. Appellant contends he "was the focus of the investigation and he had an awareness of [Sergeant] Simpkins' constructive knowledge when" questioned at "his home[, and] **Miranda** warnings should have preceded the questioning." **Id.** at 18. According to Appellant, he

> reasonably believed his freedom of movement was being restricted by the interrogation[, conducted] in an enclosed porch area[, where he was] alone with [Sergeant] Simpkins and another officer[, and was] unable to move anywhere while being questioned.

**Id.** at 18-19. Appellant avers "[t]here is no articulable reason why [trial] counsel did not file a pretrial motion in an attempt to suppress the statement given by the Appellant." **Id.** at 19. Finally, Appellant relies upon this Court's decisions in **Commonwealth v. Dewar**, 674 A.2d 714 (Pa. Super. 1996), and **Commonwealth v. Zogby**, 689 A.2d 280 (Pa. Super. 1997), which we discuss *infra*. Appellant's Brief at 19.[15]

---

[15] Appellant offers merely one sentence of analysis accompanying his reliance upon **Dewar** and **Zogby**. Appellant's Brief at 19. We caution Appellant that "this Court will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Lawrence**, 313 A.3d 265, 278 n.3 (Pa. Super. 2024) (citation, brackets, and quotation marks omitted); **see also**
*(Footnote Continued Next Page)*

The Commonwealth counters the PCRA court properly rejected the claim of trial counsel's ineffectiveness, where any motion to suppress Appellant's statements to police at his residence would have been frivolous. ***See*** Commonwealth's Brief at 10-17.

> [A]ppellant's statements were not the product of custodial interrogation, and thus, ***Miranda*** warnings were not required. Any motion to suppress them would have failed, and [trial] counsel cannot be deemed ineffective for failing to pursue a meritless claim.

***Id.*** at 14 (citation omitted). The Commonwealth maintains "there is no indication that a reasonable person in the [A]ppellant's position would have believed that his freedom of action or movement was restricted." ***Id.*** at 16. Further,

> [n]othing in the record suggests that the interaction was coercive; rather, it appears to have been brief and conversational. [Sergeant] Simpkins did not use or threaten force, did not restrain the [A]ppellant, and made no commands. There is no indication that the [A]ppellant was told he could not leave, nor was his freedom of movement restricted.

***Id.***

This Court has recognized that

> [a PCRA] petitioner claiming that counsel was ineffective for failing to move for suppression of evidence "must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a

---

***Commonwealth v. Love***, 896 A.2d 1276, 1287 (Pa. Super. 2006) ("Of particular importance is the provision of [Pa.R.A.P.] 2119(a) that a brief must contain a **developed argument** augmented by citation to pertinent authorities. Arguments not appropriately developed are waived." (citation omitted; emphasis added)).

reasonable probability the verdict would have been more favorable."

*Harper*, 230 A.3d at 1236 (quoting *Commonwealth v. Arch*, 654 A.2d 1141, 1143 (Pa. Super. 1995)).

"If an individual is not advised of his *Miranda* rights prior to **custodial** interrogation by law enforcement officials, evidence obtained through the interrogation cannot be used against him." *Harper*, 230 A.3d at 1237 (citation omitted; emphasis added); *see also Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa. Super. 2008) (*en banc*) ("Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of h[is] *Miranda* rights."). "The standard for determining whether an encounter is custodial is an objective one, focusing on the totality of the circumstances with due consideration given to the reasonable impression conveyed to the individual being questioned." *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015) (citation omitted).

> [T]he test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted.

*Commonwealth v. Gonzalez*, 979 A.2d 879, 888 (Pa. Super. 2009) (citations and brackets omitted).

The Pennsylvania Supreme Court has explained that

> *Miranda* warnings are required only when a suspect is in custody. *Commonwealth v. Ford*, 650 A.2d 433, 439 (Pa. 1994). As this Court has noted:

> A person is in custody for **Miranda** purposes only when he "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." **Commonwealth v. Johnson**, 727 A.2d 1089, 1100 (Pa. 1999). The U.S. Supreme Court has elaborated that, in determining whether an individual was in custody, the "ultimate inquiry is … whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." **Stansbury v. California**, 511 U.S. 318, 322 (1994).

**Commonwealth v. Boczkowski**, 846 A.2d 75, 90 (Pa. 2004) (footnote and parallel citations omitted).

**Commonwealth v. Sherwood**, 982 A.2d 483, 499 (Pa. 2009) (citations modified).

> Among the factors the court utilizes in determining, under the totality of the circumstances, whether [a police] detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against [his] will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions….

**Williams**, 941 A.2d at 31 (citation and quotation marks omitted); **see also Harper**, 230 A.3d at 1237 (same).

Significantly, "[t]he fact that a police investigation has focused on a particular individual does **not** automatically trigger 'custody' thus requiring **Miranda** warnings." **Commonwealth v. Mannion**, 725 A.2d 196, 200 (Pa. Super. 1999) (*en banc*) (citation omitted; emphasis in original); **see also Oregon v. Mathiason**, 429 U.S. 492, 495 (1978) ("Any interview of one

suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer **Miranda** warnings to everyone whom they question.").

Instantly, the PCRA court opined it properly rejected Appellant's claim of trial counsel's ineffectiveness, finding that "a motion to suppress [Appellant's] voluntary statements would have been inappropriate and frivolous, as the statements were voluntary and made at [Appellant's] home[,]" where he was not in custody. PCRA Court Opinion, 11/22/24, at 5; **see also id.** at 4 (recognizing that "**Miranda** rights are only applicable when the individual is undergoing actual custodial interrogation." (citations and quotation marks omitted)). We agree.

Considering the totality of the circumstances, we conclude that the record amply supports the PCRA court's determination that Appellant was not in custody at the time of his statements to police. Appellant voluntarily answered the door when police responded to his residence, agreed to speak with them "outside," and directed them to the porch. N.T., 10/31/18, at 162-63; **see also id.** at 163 (Sergeant Simpkins describing the porch as an "open porch" attached to Appellant's residence). As discussed *supra*, Sergeant Simpkins then asked Appellant a few questions, mostly concerning the victim's allegations and Appellant's activities at the motel, which he voluntarily

answered. *See id.* at 163-66. There is no indication in the record (which, on this point, consists solely of Sergeant Simpkins' limited trial testimony), that police (1) used force; (2) threatened the use of force; (3) restrained Appellant; (4) transferred Appellant against his will; or (5) restricted Appellant's movements in any fashion.[16] *See Williams*, 941 A.2d at 31.

Further, the police interaction appears to have been brief, and there is no indication that police used any coercive tactics or told Appellant he was obligated to continue to speak with them. Moreover, the mere fact that Appellant may have been aware, at the time of his statements, that he was the focus of police investigation does not render the interaction custodial. *See Mannion*, 725 A.2d at 200.

Finally, we conclude Appellant's reliance upon our decisions in *Dewar*, *supra*, and *Zogby*, *supra*, is misplaced. This Court summarized *Dewar* and *Zogby* in *Commonwealth v. Busch*, 713 A.2d 97 (Pa. Super. 1998):

> In … *Dewar*, the police went to the home of a doctor who was suspected of sexually molesting his patients, and asked him some questions. "The only evidence of record concerning the statements made by [Dewar] to the police" was the testimony of one of the police officers who questioned Dewar. [] *Dewar*, 674 A.2d at 716-17. This testimony indicated what Dewar had said before he was arrested, as well as the fact the officer had given Dewar his *Miranda* rights, but had not had him sign a form because the officer did not have one with him. *Id.* at 717. As the *Dewar* [C]ourt observed:

---

[16] There is no support in the record for Appellant's bald claim that he was "unable to move anywhere while being questioned" at his own home. Appellant's Brief at 19.

> Given the scant facts above, we are constrained to conclude that [Dewar] was in "custody" when questioned. While we note that [Dewar] was questioned in his own home before he was arrested, [Dewar] was also the focus of the investigation and questioned in the presence of two police officers. *No evidence was offered as to the length of detention or whether* [*Dewar's*] *freedom of movement was restricted.* Under the circumstances, given the evidence presented, we cannot find that the trial court erred in concluding that [Dewar] was in "custody" during the police interrogation.

*Id.* (emphasis added).

* * *

> In … *Zogby*, … this [C]ourt found that Zogby was the subject of a custodial interrogation when the police, who were investigating a hit-and-run accident, came into his bedroom at 4:00 a.m. after being admitted by his roommate, awakened Zogby from a sound sleep by shaking his leg and pulling off his covers, and advised him to come outside to answer some questions about damage to the side of his car. … *Zogby*, 689 A.2d at 281. Zogby was not told he could decline the officer's invitation; in fact, the officer testified that he would have persisted in attempting to gain Zogby's cooperation until he complied. *Id.* at 283.

*Busch*, 713 A.2d at 101, 102 (citations modified).

In *Busch*, police conducted an investigation into a theft, which led them to suspect that defendant, an employee of the victim, was involved in the crime. *Id.* at 98; *see also id.* at 99 (explaining that "[d]efendant was the focus of the investigation."). Police traveled to defendant's residence and questioned him therein about the theft, on two separate occasions, with his consent. *Id.* at 98-99. "During the second round of questioning[,] the defendant was asked incriminating questions and was not *Mirandized*, and

- 21 -

eventually asked the detectives to leave his home." *Id.* at 99 (citation and brackets omitted; capitalization modified). The Commonwealth charged defendant with criminal conspiracy. *Id.* Defendant filed a pretrial motion to suppress his statements to police, asserting his statements, made during a custodial interrogation and without *Miranda* warnings, were inadmissible. *Id.* The trial court granted the suppression motion, finding "once the defendant became a suspect in the case and the focus of the case, the detectives should have given the defendant his *Miranda* warning." *Id.* (citation omitted; capitalization modified).

The Commonwealth in *Busch* appealed the grant of defendant's suppression motion. *Id.* This Court reversed, holding "the suppression court erred in its legal conclusion that [defendant] was entitled to *Miranda* warnings when he was interrogated merely because he was a suspect in the case and/or a focus of the investigation." *Id.* We held that under the totality of the circumstances, defendant was not in custody when interviewed by police at his home, and thus, defendant was not entitled to *Miranda* warnings. *See id.* at 101-02. We distinguished *Dewar* and *Zogby*, which the defendant relied upon on appeal. *Id.* at 101, 102.

Upon our review, we conclude the instant case is similar to *Busch*, and dissimilar to *Dewar* and *Zogby*. As the Commonwealth correctly asserts, both *Dewar* and *Zogby* implicated "Commonwealth appeals from the granting of a motion to suppress, which are reviewed under a deferential standard

favoring the defense." Commonwealth's Brief at 16. Moreover, the instant case does not involve the unique factual circumstances presented in *Dewar* and *Zogby*.

Based upon the foregoing, we conclude Appellant was not in custody when police questioned him at his residence; thus, he was not entitled to *Miranda* warnings. *See Busch*, 713 A.2d at 101-02; *see also Commonwealth v. Freeman*, 128 A.3d 1231, 1241 (Pa. Super. 2015) (holding defendant accused of murder was not in custody, and thus, *Miranda* warnings were not required, where (1) defendant made statements to police investigating the crime at his residence, during approximately ten or fifteen minutes of questioning; (2) defendant voluntarily accompanied police to the police station for further questioning; (3) police did not show, use, threaten to use force, transfer defendant against his will, or restrain defendant; (4) police were dressed in business attire, drove an unmarked car, and never displayed any firearms; and (5) police reminded defendant multiple times that he was not under arrest and was free to leave at any time). Because the PCRA court properly determined that "a motion to suppress [Appellant's] voluntary statements would have been inappropriate and frivolous," PCRA Court Opinion, 11/22/24, at 5, Appellant's derivative claim of trial counsel's ineffectiveness fails. *Baumhammers*, 92 A.3d at 722 n.7. Appellant's first issue merits no relief.

Appellant next argues the PCRA court improperly rejected his claim of direct appeal counsel's ineffectiveness for failing to challenge, on direct appeal, the denial of Appellant's mistrial motion asserting a ***Brady*** violation. ***See*** Appellant's Brief at 20-25. Appellant claims he "specifically requested [direct appeal] counsel to include, as an issue filed with the Superior Court of Pennsylvania, the failure of trial counsel to" challenge the denial of Appellant's mistrial motion. ***Id.*** at 24 (capitalization and punctuation modified). According to Appellant, direct appeal counsel ignored Appellant's request, without justification, and to Appellant's prejudice. ***Id.*** at 24-25.

> The Pennsylvania Supreme Court has instructed that
>
> [t]o prove a ***Brady*** violation, [an accused] must demonstrate that: (1) the prosecution concealed evidence; (2) which evidence was either exculpatory or impeachment evidence favorable to him and; (3) he was prejudiced by the concealment. In order to prove prejudice, [the accused] must show a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

***Commonwealth v. Bomar***, 104 A.3d 1179, 1189 (Pa. 2014) (internal citations and quotation marks omitted). The burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed material evidence. ***Commonwealth v. Cam Ly***, 980 A.2d 61, 75 (Pa. 2009); ***see also id.*** (stating that the "prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." (citation omitted)).

"It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion." ***Commonwealth v. Chamberlain***, 30 A.3d 381, 422 (Pa. 2011) (citation omitted). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Id.*** (citation and quotation marks omitted); ***see also Commonwealth v. Laird***, 988 A.2d 618, 638 (Pa. 2010) (noting that a mistrial is an "extreme remedy").

Instantly, the PCRA court rejected Appellant's claim of direct appeal counsels' ineffectiveness in its opinion, reasoning as follows:

> During trial, [trial] counsel made a motion for mistrial because medical treatment information was uncovered during testimony for which neither side was previously aware. However, [the trial] court denied the motion, as the medical records were obtained by the Commonwealth overnight and provided to trial counsel. **Trial counsel then utilized these records throughout the remainder of the trial to shed doubt on the credibility of** [**A.G.**] Thus, [the trial] court's denial of [Appellant's] motion for mistrial during trial was appropriate….

PCRA Court Opinion, 11/22/24, at 5 (emphasis added; capitalization modified). The PCRA court concluded there was no merit to Appellant's claim of direct appeal counsels' ineffectiveness, and that any challenge to the denial of the mistrial motion "on appeal would be frivolous." ***Id.***

The PCRA court's foregoing rationale is supported by the record and the law, and we agree with its conclusion. ***See id.*** As the Commonwealth

- 25 -

persuasively argues, following A.G.'s unanticipated testimony about taking the victim to the doctor for pain in her genitals, the trial court appropriately

> admitted [the victim's medical] records without redaction, allowed trial counsel to argue inferences from them in closing, and permitted additional testimony from [Sergeant] Simpkins regarding their content and the police investigation. N.T., 11/5/18, at 5-7, 8-17. **The records revealed that** [**the victim**] **was seen for sinus issues – not vaginal pain – thus** *undermining* [*A.G.'s*] *credibility* **and strengthening the defense theory**. *Id.* at 9-13, 19-21; *see also* Exhibit C-17. **The trial court's actions cured any alleged prejudice** and arguably placed the defense in a more favorable position. Under these circumstances, there was no abuse of discretion in denying the [motion for a] mistrial, and any appellate claim to the contrary would have been meritless.

Commonwealth's Brief at 19-20 (emphasis added). Appellant's final issue merits no relief.

Based upon the foregoing, as we discern no abuse of the PCRA court's discretion or error of law in rejecting Appellant's ineffectiveness of counsel claims, we affirm its order dismissing Appellant's first PCRA petition without a hearing.

Order affirmed.

Judge Stabile joins the memorandum.

Judge Sullivan did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>7/28/2025</u>